# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA SOUTHERN DIVISION

| | |
|---|---|
| SAM A. VIRCIGLIO, ) | |
| ) | |
| PLAINTIFF, ) | |
| ) | CIVIL ACTION NO.: |
| v. ) | 2:12-CV-03738-AKK |
| ) | |
| WORK TRAIN STAFFING, LLC, ) | JURY DEMAND |
| WORK TRAIN USA, LLC, ) | |
| FRANK PETRUSNIK, AND MARK ) | OPPOSED |
| GEORGE ) | |
| ) | |
| **DEFENDANTS** | |

## MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

COMES NOW the Plaintiff, Sam Virciglio, (hereinafter "Plaintiff") by and through his undersigned counsel, and, pursuant to Federal Rules of Civil Procedure 16(b) and 15(a), moves the Court for leave to file his proposed Amended Complaint, attached hereto as Exhibit A. Defendant opposes this motion. As grounds for this motion, Plaintiff states as follows:

1. Plaintiff filed his Complaint on October 30, 2012 against his former employers. (Doc. 1). Plaintiff's complaint alleges violation of Title VII and Alabama State law claims for fraud and promissary estoppel. Among other allegations, Plaintiff's complaint alleges that in 2011 and early 2012, Plaintiff's wife was

       battling what turned out to be terminal cancer, and that Plaintiff's wife was an eligible family member whose health care was covered by Plaintiff's company-provided health care plan.

2. Plaintiff's complaint alleges that in and around November and December of 2011, Frank Petrusnek and Mark George told Plaintiff that, beginning in January of 2012, the company would deduct funds from his paycheck and use the deducted funds to purchase health coverage for Plaintiff and his eligible family members (including his wife); that on or about January 8, 2012, the Plaintiff received his first paycheck of 2012, and that the January 8, 2012 paycheck contained a $476.000 deduction for "health."

3. Plaintiff's complaint further alleges that at the time of Plaintiff's termination on or around January 8, 2012, Defendant Petrusnek told Plaintiff that the Defendants would pay for Plaintiff's entire January 2012 health premium so that he would not have to worry about picking up coverage from another plan until February 2012. Relying on Defendant's promise to maintain his health insurance through the end of January, Plaintiff and his wife continued to incur health expenses in January, 2012 that would have been covered under the company's plan with Blue Cross / Blue Shield of Alabama.

4. After his wife's death, as set forth in his complaint, Plaintiff discovered that

       Blue Cross was refusing to pay claims for medical expenses incurred by his wife relating to her cancer treatments during January, 2012.

5. Plaintiff's deposition took place on June 12, 2013, approximately twelve days after the May 30, 2013 deadline for amending the complaint in the Court's scheduling order.

6. Based on questioning by defense counsel in Plaintiff's deposition, it appears that the allegations in Plaintiff's complaint relating to Plaintiff's fraud claim slightly misstate the facts of the case in potentially significant ways.

7. At the time Plaintiff filed his complaint and at all times prior to his deposition in this case, Plaintiff believed that Defendant had never paid his health insurance premium for January and that this was the reason that Blue Cross ultimately refused to honor claims for payment relating to his wife's January, 2012 cancer treatments.

8. At his deposition, Plaintiff and his counsel realized for the first time that this belief, which is set forth in Plaintiff's original complaint, was not wholly correct.

9. Based on questions asked by defense counsel, it now appears that Defendant likely paid Plaintiff's health insurance premium for January in advance. At some point following Plaintiff's termination, Defendant then apparently

cancelled Plaintiff's health insurance retroactively to January 1, 2012, resulting in health care charges that had initially been paid by Blue Cross for the month of January being billed back to Plaintiff, even though Defendant Petrusnek had promised Plaintiff that he would be covered through the end of January.

10. As stated above, these circumstances are contrary to Plaintiff's prior belief that he had at no time been covered under Defendant's insurance plan for January.

11. Plaintiff, out of diligence, asks the Court for leave to amend his complaint immediately to correct the inaccuracies contained therein in regard to his fraud and promissary estoppel claims, as Plaintiff expects that Defendant Petrusnek, when he is deposed, will confirm that Defendant actually paid Plaintiff's health insurance premium for the month of January in advance, then, after Plaintiff's termination, retroactively canceled his coverage. Plaintiff also anticipates that Defendant Petrusnek will confirm that Defendant subsquently received a credit from Blue Cross for the full amount that had been paid in advance for the month of January on Plaintiff's behalf.

12. In addition, based on questions asked by defense counsel in Plaintiff's deposition, it appears that Defendant Petrusnek is likely to take the position that he verbally informed Plaintiff of the need for Plaintiff to submit payment to Defendant and/or to Blue Cross in order to maintain coverage for the month

of January.

13. During his deposition, Plaintiff denied receiving any such verbal notification of any need to submit payment to Defendant and/or to Blue Cross in order to maintain his health insurance coverage for the month of January.

14. Under the facts set forth above, contrary to Plaintiff's prior belief, it appears that Plaintiff <u>was</u> covered by Defendant's health insurance plan at the time of his termination. Again contrary to Plaintiff's prior belief, it now appears that Plaintiff <u>was</u> eligible to elect COBRA continuation coverage after his termination.

15. In addition to receiving no verbal notification of his COBRA continuation rights, re-examination of the documents produced in this matter confirms that Plaintiff received no written notification regarding what he would need to do to continue his health insurance benefits after his termination, and that he received no COBRA eligibility notification.

16. Accordingly, after Plaintiff's deposition, based on the questions asked by defense counsel suggesting that Plaintiff was in fact covered by Defendant's health plan at the time of his termination, it became clear for the first time to Plaintiff and his counsel that Defendant had violated the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), 29 U.S.C. §

1166(a), by failing to give Plaintiff written notice of his COBRA continuation rights. But for Defendant's violation of COBRA, Plaintiff's health insurance would not have lapsed and he would not have incurred charges for the month of January relating to cancer treatments for his terminally ill wife, as Plaintiff acted promptly to obtain substitute coverage beginning February 1, 2012, believing he would still be covered by Defendant's plan until that date.

17. Accordingly, Plaintiff, out of diligence, comes to the court immediately to ask for leave to file an amended complaint including the above-noted corrections to the facts of his fraud and promissary estoppel claims, and also adding a claim for statutory penalties and compensatory damages for Defendant's violation of COBRA's notification provision.

18. Plaintiff's COBRA claim "relates back" to the filing of his original complaint under Rule 15(c), as Plaintiff's COBRA claim asserts a claim arising "out of the conduct, transaction, or occurrence set out–or attempted to be set out–in the original pleading."

19. Even if the relation back doctrine did not apply, Plaintiff's COBRA claims are still timely. As noted by the Eleventh Circuit, "[a]lthough COBRA does not provide a limitations period for improper-notice claims, the settled practice is for federal courts to 'borrow' the most analogous limitations period from the

forum state." *Cummings v. Wash. Mut.*, 650 F.3d 1386, 1391 fn4 (11th Cir. 2011).

20. The forum state of *Cummings* was Georgia. For the appropriate statute of limitations on Plaintiff's COBRA improper-notice claim, the Eleventh Circuit looked to the one year statute of limitation of O.C.G.A. § 9-3-28, which provides that "[a]ll actions by informers to recover any fine, forfeiture, or penalty shall be commenced within one year from the time the defendant's liability thereto is discovered or by reasonable diligence could have been discovered." *Id*. at

21. The forum state of the present case is Alabama. The most analogous provision to the Georgia Statute from which the *Cummings* court borrowed its statute of limitations is Alabama Code Section 6-2-38(j), which states that "[a]ll actions qui tam or for a penalty given by statute to the party aggrieved, unless the statute imposing it prescribes a different limitation, must be brought within two years."

22. Given that COBRA's cause of action remains independently viable under Alabama's two year statute of limitation for an action for a penalty given by statute, Plaintiff will have no choice but to file a separate lawsuit if he is not able to amend the complaint in this case, resulting in inefficient use of judicial

resources and unnecessary expenditure.

23. In addition, Plaintiff notes that his COBRA claims and Title VII claims both involve common issues of disputed fact as to whether Defendant meets the numerosity requirements of Title VII and COBRA by virtue of its activities as a staffing agency nominally employing numerous individuals working for other private and public entities; accordingly, if Plaintiff is forced to pursue these claims in separately filed cases, there is a quite significant risk that two different Federal Courts in this district might reach contradictory results.

24. Defendant will not be prejudiced by the Court granting leave to amend, as Plaintiff's COBRA claims involve no additional factual circumstances beyond those already alleged in his original complaint (except to the extent that Plaintiff seeks to correct the factual allegations of his fraud / promissory estoppel claims to conform to factual circumstances previously known to Defendant). Defendant's defense to Plaintiff's COBRA claim will likely be that it does not have a sufficient number of employees to fall under COBRA's notice requirements, a defense that Defendant is likely to assert to Plaintiff's Title VII claims, as well. (It should be noted that Plaintiff disputes the factual basis for this defense, as documents in the record indicate that Defendant, through its activities as a staffing agency, meets the numerosity requirements

of both statutes). Accordingly, Plaintiff's addition of this claim will introduce no additional areas of factual dispute that were not already at issue in regard to Plaintiff's Title VII and fraud claims.

25. To the extent that Defendant defends against Plaintiff's COBRA claim by asserting that its plan administrator provided Plaintiff with the required written notice, Defendant ought easily to be able to produce documents showing that it complied, if it contends that notice was provided. However, to date no such documents have been produced, though they would have been highly relevant and pertinent to Plaintiff's fraud and promissary estoppel claims.

26. Accordingly, Plaintiff asks that the Court find that Plaintiff has been diligent in seeking to amend his complaint as soon as he discovered the existence of a viable COBRA cause of action, satisfying the "good cause" standard for allowing amendment under rule 16(b).

27. In addition, Plaintiff asks that the Court find that amendment is warranted under Rule 15(a)(2), which states that "[t]he Court should freely give leave when justice so requires." In the absence of any substantial reason to deny the motion, such as undue prejudice to defendant, undue delay, bad faith or dilatory motive on the part of the plaintiffs, repeated failure to cure deficiencies or futility, the interests of justice require that leave should be

freely given. *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962); *Hargett v. Valley Fed. Savings Bank*, 60 F. 3d 754, 761 (11th Cir. 1995).

28. As shown above, Plaintiff has not unduly delayed seeking amendment, but rather has moved to amend his complaint immediately after learning of a viable cause of action under COBRA. Amendment in this case would promote judicial efficiency by avoiding multiple actions, with the very real possibility of inconsistent results, and would serve the interest of justice by allowing the parties to fully resolve their disputes in a single action. In addition, allowing amendment would not prejudice Defendant because the proposed amendment involves no factual issues not already in dispute with regard to Plaintiff's existing claims. Plaintiff's proposed amendment would not be futile, as documents in the record indicate that Defendant employed the requisite number of employees through its staffing agency.

29. Accordingly, Plaintiff requests that the Court grant Plaintiff's motion for leave to amend and permit Plaintiff to file his proposed amended complaint, attached hereto as Exhibit A.

Respectfully submitted,

/s/ L. William Smith
Jon C. Goldfarb asb-5401-f58j
Daniel E. Arciniegas asb-7809-d67a
L. William Smith asb-8660-A61S
Counsel for Plaintiff

**OF COUNSEL:**
WIGGINS, CHILDS, QUINN & PANTAZIS LLC
301 19th Street North
Birmingham, Alabama 35203
Telephone No.: (205) 314-0500
Facsimile No.: (205) 254-1500

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document has been properly served via the court's electronic filing system on the following counsel of record:

Christopher Lyle McIlwain, Sr.
HUBBARD, WIGGINS, McILWAIN &
& BRAKEFIELD, P.C.
Attorneys for Defendants
P. O. Box 2427
Tuscaloosa, AL 35403-2427
Telephone: (205) 345-6789

on this the 14th day of June, 2012.

/s/ L. William Smith
OF COUNSEL